IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| SHEILA WILLIAMS, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|           v. | ) | CIVIL NO. 3:11-cv-764-HEH |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
|     Commissioner of Social Security, | ) | |
|     Defendant. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

Sheila Williams ("Plaintiff") is 50 years old and has worked as a factory packer. In 2009, she worked part-time cleaning offices. Plaintiff alleges that she suffers from hip and back problems. On January 3, 2008, Plaintiff applied for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") with a disability onset date of June 14, 2007, under the Social Security Act (the "Act"). Plaintiff's claim was presented to an administrative law judge ("ALJ"), who denied Plaintiff's request for benefits. After a remand from the Appeals Council and a supplemental hearing, the ALJ again denied Plaintiff benefits. On September 17, 2011, the Appeals Council denied Plaintiff's request for review.

In his decision, the ALJ discussed Plaintiff's obesity. (R. at 16.) He also assigned no weight to Plaintiff's treating physician, because it was not supported by longitudinal evidence and was contradicted by other objective evidence in the record. (R. at 19-20.) The ALJ assessed the credibility of Plaintiff based on Plaintiff's medical records and activities of daily living ("ADLs"). (R. 17-19.) In doing so, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work, except that she was limited to occasional bending,

crawling, crouching, kneeling and stooping and could never climb ladders, rope or scaffolds. (R. at 16.) Plaintiff now challenges the ALJ's denial of benefits, asserting that the ALJ failed to properly consider her obesity, assess her credibility, assign weight to the opinion of her treating physician and conduct a function-by-function analysis of her RFC. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 3-14.)

Plaintiff seeks judicial review of the ALJ's decision in this Court pursuant to 42 U.S.C. § 405(g). The parties have submitted cross-motions for summary judgment, which are now ripe for review.[1] Having reviewed the parties' submissions and the entire record in this case, the Court is now prepared to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, it is the Court's recommendation that Plaintiff's motion for summary judgment (ECF No. 7) be DENIED, Defendant's motion for summary judgment (ECF No. 9) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

## I. BACKGROUND

Because Plaintiff argues that the ALJ failed to address her obesity and improperly assessed her credibility and RFC, Plaintiff's education and work history, Plaintiff's medical history, the opinions of the non-treating state agency physicians, the opinion of Plaintiff's treating physician and Plaintiff's testimony are summarized below.

## A. Plaintiff's Education and Work History

---

[1] The administrative record in this case has been filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

Plaintiff completed high school. (R. at 94.) She also attended several years of college. (R. at 94, 302.) Plaintiff has worked as a factory packer, which consisted of making packaging and placing cookies in the packaging. (R. at 304.) Her last position was as a temporary worker until June 14, 2007, when her assignment ended. (R. at 297, 304.)

## B.    Plaintiff's Medical History

In February 2008, Plaintiff visited the Orthopedic Specialty Clinic at the Medical College of Virginia with lower back and right leg pain. (R. at 478.) Patient notes documented 5/5 bilateral strength, no sensory deficits, symmetrical reflexes and negative straight leg raise. (R. at 478.) On March 23, 2007, Plaintiff complained of right hip pain when she climbed stairs or rolled over in bed. (R. at 462.) Plaintiff was taking Ibuprofen twice a day. (R. at 462.) Patient notes indicated that x-rays revealed "very mild arthritic changes of the hip." (R. at 462.) One month later, Plaintiff had negative straight leg raise, 5/5 bilateral strength, negative sensory deficits and symmetrical reflexes. (R. at 476.)

An x-ray of Plaintiff's lumbar spine dated August 20, 2007 revealed mild levoconvex scoliosis[2] and mild degenerative disc disease, most notably at the L4/L5 level. (R. at 422.) A few days later, an MRI of Plaintiff's lumbar spine without contrast indicated a small annular tear and mild broad-based disc bulge without significant spinal stenosis, mild bilateral narrowing and moderate facet disease at the L5-S1 level. (R. at 427.) Plaintiff had multiple spinal injections to ease her pain. (*See* R. at 429, 451, 546, 578, 645.)

On November 30, 2007, Plaintiff complained of hip and back pain rated at a seven out of 10. (R. at 451.) Plaintiff had decreased range of motion in her flexion and external rotation in her right hip. (R. at 451.) She had a full range of motion in her back. (R. at 451.) One month

---

[2] Scoliosis is "an appreciable lateral deviation in the normally straight vertical line of the spine. *Dorland's Illustrated Medical Dictionary* 1681 (32st ed. 2012).

3

later, Plaintiff stated that she had lower back and right leg pain. (R. at 475.) Patient notes indicated 5/5 bilateral strength, no sensory deficits, symmetrical reflexes, full range of motion and negative straight leg raises. (R. at 475.)

On February 1, 2008, Plaintiff complained of back and right leg pain, but had 5/5 bilateral motor strength with no sensory deficits, symmetrical reflexes and a negative straight leg raise. (R. at 450.) In June 2008, Plaintiff stated that she had pain when she sat or stood. (R. at 584.) She had no sensory or motor findings. (R. at 584.) One month later, Plaintiff rated her pain at nine out of 10. (R. at 547.) The patient notes documented her physical therapy and injections, which provided her with some relief, and Plaintiff's smooth, regular gait, 5/5 strength and negative straight leg raises. (R. at 547.)

From April 22 to September 18, 2008, Plaintiff attended physical therapy sessions to ease her back pain. (R. at 554-78.) Before she began physical therapy, Plaintiff had good single leg balance and standing, minimal loss of flexion, moderate loss of extension and minimal loss of side bending and rotation. (R. at 578.) Plaintiff stopped therapy when she determined that she could continue in the pool independently, given her positive response to therapy. (R. at 554.)

For almost once a month between September 2008 and May 2009, Plaintiff visited Durgada Basavaraj, M.D., and rated her back pain at three out of 10 while on medication, but a five out of 10 while working or performing physical activity. (R. at 586, 622, 626, 629, 633, 635, 639.) She stated that she had no severe fatigue or tiredness while performing normal activities around the house. (R. at 586, 622, 626, 629, 633, 635, 639.) Plaintiff had a normal range of motion in her hip, knee and ankle joints without pain, 5/5 muscle strength with normal reflexes and a normal straight leg raise. (R. at 587, 622, 626, 629, 633, 636, 640.) A May 2009 x-ray of Plaintiff's right hip revealed mild osteoarthritis of the hips bilaterally and an x-ray of

4

Plaintiff's lumbar spine indicated mild facet arthrosis of L5-S1. (R. at 720-21.) Patient notes from June 2009, July 2009 and November 2009 documented the same findings. (R. at 933-34, 921-23, 901-02.)

While Plaintiff complained of a significantly higher amount of pain every two months between April 2010 and October 2010, rating her pain at a seven out of 10, Dr. Basavaraj still documented that Plaintiff was not severely tired or fatigued with normal home activities and that Plaintiff had a normal range of motion in her hip, knee and ankle joints without pain, 5/5 muscle strength with normal reflexes and a normal straight leg raise. (R. at 833-34, 878-79, 881-82, 885-86.) Dr. Basavaraj also documented that Plaintiff should continue to use her cane. (R. at 834, 879, 882, 886.)

C.      The Treatment Notes and Opinion of Harold T. Green, Jr., M.D., Plaintiff's Treating Physician

Patient notes from Harold T. Green, Jr., M.D., included notes from Dr. Basavaraj. (*See* R. at 858-934.) Plaintiff visited Dr. Green on June 12, 2009, stating that she had fallen down her stairs several times. (R. at 874.) Dr. Green documented tenderness on Plaintiff's back, a decreased range of motion and a negative straight leg raise. (R. at 874.) A month later, Plaintiff stated that she was denied visiting the pool due to falling in the pool, but Dr. Green indicated no motor findings. (R. at 873.) In August 2009, Dr. Green documented no sensory or motor findings and encouraged a regular exercise regimen lasting 20-60 minutes for three to five times a week. (R. at 871.)

On September 9, 2009, Dr. Green completed a Medical and Functional Capacity Assessment. (R. at 782-89.) Dr. Green marked that Plaintiff suffered from degenerative disc disease, which resulted in a compromise of a nerve root with pain, the limitation of motion of the spine and a positive straight leg raise. (R. at 783.) He opined that Plaintiff could stand, walk or

sit for less than 30 minutes at a time, could not alternate between standing and sitting during an eight-hour day without being interrupted due to pain, could not walk without experiencing pain and could only sit, stand or walk for less than one hour during an eight-hour workday. (R. at 784.) Further, Dr. Green indicated that Plaintiff was in continuous pain, could not lift or carry more than 10 pounds, could never climb ramps, stairs, ladders, ropes or scaffolds and could never kneel, crouch, crawl, stoop or bend. (R. at 786.) Plaintiff could never push or pull, but could intermittently reach, handle, finger and feel. (R. at 787.)

Dr. Green marked that Plaintiff would need more than three hours of rest lying down during an eight-hour workday for one continuous period. (R. at 787.) Further, he marked that Plaintiff's ability to sustain concentration, attention, focus, persistence and pace during an eight-hour workday would be diminished by 36% as a result of Plaintiff's pain, fatigue and/or side effects of her medication. (R. at 788.) Finally, Dr. Green checked that Plaintiff could not complete an eight-hour workday on a sustained basis and could not maintain her work station for two continuous hours during a workday. (R. at 788.) He indicated that Plaintiff complied with all recommended therapeutic regimens and was credible. (R. at 788.)

On September 14, 2009, Dr. Green documented no sensory or motor findings in Plaintiff's patient notes. (R. at 870.) A month later, Plaintiff had no sensory or motor deficits and negative straight leg raises, but Dr. Green noted tenderness and spasms on Plaintiff's back with a decreased range of motion. (R. at 868.) In January 2010, Plaintiff complained of lower back pain, walked with a cane, and again had no sensory or motor deficits and negative straight leg raises. (R. at 866.) Plaintiff was documented with tenderness and spasms on her back with a decreased range of motion. (R. at 866.)

Dr. Green indicated that Plaintiff still reported lower back pain on March 2, 2010, but found no sensory or motor findings. (R. at 865.) Similar findings were documented in April 2010, July 2010 and October 2010. (R. at 856, 861, 886.)

**D.     The Opinions of the Non-treating State Agency Physicians**

On May 7, 2008, David Williams, M.D., a non-treating state agency physician, opined that Plaintiff could occasionally carry 20 pounds, frequently carry 10 pounds, stand or walk for about six hours in an eight-hour workday and sit for about six hours in an eight-hour workday. (R. at 519-24.) Dr. Williams also determined that Plaintiff could frequently use ramps, climb stairs and balance; could occasionally climb ladders, stoop, kneel, crouch or crawl; and could never climb ropes or scaffolds. (R. at 520.) On December 23, 2008, Tony Constant, M.D., a non-treating state agency physician, re-affirmed Dr. Williams' assessment of Plaintiff's light RFC with postural limitations. (R. at 605.)

**E.     Plaintiff's Statements**

In a Pain Questionnaire dated March 4, 2008, Plaintiff wrote that she had throbbing, aching and stabbing pain in her lower back and right hip, foot and leg. (R. at 312.) Her pain occurred all day and was caused by standing for long periods of time, sitting, bending, kneeling, squatting, reaching and lifting. (R. at 312.) Plaintiff indicated that nothing relieved the pain, but her shots helped. (R. at 313.)

That same day, Plaintiff completed a Function Report, writing that she prayed, read her Bible, talked with friends and family, dusted, ate, swept and watched television daily. (R. at 314.) She marked that she did not take care of anyone other than herself. (R. at 315.) Plaintiff's right hip hurt when she tried to sleep and had pain when she bent. (R. at 315.) Plaintiff could prepare simple meals, went outside five times a week and shopped once a month. (R. at 316-17.)

She noted that she could not sit for long periods of time and visited church once a week. (R. at 318.) Plaintiff marked that her pain affected her ability to lift, walk, squat, sit, bend, kneel, stand and reach. (R. at 319.) She could only walk for a quarter mile before resting and lift 10-15 pounds. (R. at 319.) In another Function Report, Plaintiff indicated that she performed water aerobics, did not drive, had become weaker, was limited with climbing stairs, could only walk a half a block and fell asleep as a result of her medication. (R. at 342-48.)

On December 12, 2010, Plaintiff completed a Daily Activities Questionnaire. (R. at 371-76.) She wrote that she performed light dusting and sweeping with help and that she was always in pain. (R. at 371.) Plaintiff walked with a cane and was unable to bend, stoop, kneel, sit or stand for long periods of time. (R. at 371.) Plaintiff went to the bank, grocery store, church and doctors' appointments infrequently. (R. at 371.) She indicated that she needed assistance to perform most activities. (*See* R. at 371.) Plaintiff visited with friends and family a few times a month, needed assistance taking care of her personal needs, watched television, read, did not cook, did not drive and could not sleep well. (R. at 371-74.) She also indicated that she had health issues for a while, which would affect her attendance at work. (R. at 375.)

On September 9, 2009, Plaintiff testified at a hearing before the ALJ. (R. at 90-127.) She indicated that she graduated from high school and had several years of college. (R. at 94.) Plaintiff had not worked since 2007, when she was performing temporary work and had just had surgery for a hernia and a hysterectomy. (R. at 95-97.) She discussed that she stayed upstairs in her house, because she was afraid of falling down the stairs. (R. at 98-99.) Although she had a drivers' license, Plaintiff never drove. (R. at 99-100.) She attended church and had help attending to her personal hygiene. (R. at 100, 102.) Plaintiff had been attending water physical

therapy, but stopped because she kept falling during therapy. (R. at 101, 110.) She indicated that she stayed in bed throughout the majority of the day. (R. at 111-12.)

Plaintiff testified that she would rate her pain at over 10 out of 10 on her worst days, but that she was experiencing pain of an eight or nine out of 10 at the hearing. (R. at 105.) She stated that she had pain in her back, leg and feet. (R. at 106-07.) Plaintiff also noted that she had headaches that could last a few days at a time. (R. at 112.) Plaintiff assumed that she could lift a gallon of milk, but noted that bending, stooping and squatting were difficult. (R. at 107.) She could not exercise because of her pain, could only walk two or three minutes before needing to take a break, could stand for five minutes and could sit for 10 minutes. (R. at 108-09.) Plaintiff explained that she used a cane, because she would fall on the steps. (R. at 109.)

On March 31, 2011, Plaintiff again testified before an ALJ, stating that she was 5'5" tall and 262 pounds. (R. at 31-38.) Plaintiff listed her medications as Nexium, Acyclovier, hydrocodone, Valium, Celexia, Xalatan, Topamax and Celebrex. (R. at 39-42, 44.) Plaintiff indicated that she noticed weight gain from Celexia and that her hair was falling out. (R. at 40-41, 44.) Although one was never prescribed to her, Plaintiff used a cane, because she would fall over in the water when she exercised as a result of her poor equilibrium. (R. at 42.) However, Plaintiff's neurologist recommended the continued use of a cane. (R. at 43.)

Plaintiff also stated that she had pain in her lower back, right leg, feet and left arm. (R. at 46.) She characterized her pain as a sharp, throbbing, shooting pain that occasionally tingled. (R. at 46.) Plaintiff occasionally had pain rated at 10 out of 10, because she would become stuck in a position and have spasms. (R. at 47.) At the hearing, she rated her pain at seven out of 10. (R. at 47.) She could only lift 10 pounds. (R. at 60.) Plaintiff testified that she could stand for 10 minutes and walk for 10 to 15 steps before resting. (R. at 48.) She also stated that she was

"constantly up and down," standing and sitting, but later testified that she spent a significant time in her bedroom. (R. at 48, 58.) Plaintiff indicated that she had trouble sleeping, did not drive, read her Bible, watched television, shopped once a month for groceries, swept and dusted and occasionally went to church. (R. at 50-56.) She slept in the upstairs of a townhouse and lived with her 26-year old daughter with special needs and her fiancé. (R. at 55.)

## II. PROCEDURAL HISTORY

Plaintiff protectively filed for SSI and DIB on January 3, 2008, claiming disability due to hip and back problems with an alleged onset date of June 14, 2007. (R. at 255-66, 293, 297.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[3] (R. at 150-55, 167-77.) On September 9, 2009, Plaintiff testified before an ALJ. (R. at 90-127.) A month later, the ALJ issued a decision finding that Plaintiff was not disabled. (R. at 136-45.) The Appeals Council remanded that decision for an evaluation of Plaintiff's obesity, subjective complaints and side effects from her medication. (R. at 147-49.) A supplemental hearing was held on March 31, 2011. (R. at 31-87.) On April 28, 2011, the ALJ again denied Plaintiff benefits, finding that she was not disabled under the Act. (R. at 13-22.) The Appeals Council subsequently denied Plaintiff's request to review the ALJ's decision on September 17, 2011, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (*See* R. at 1-3.)

---

[3] Initial and reconsideration reviews in Virginia are performed by an agency of the state government — the Disability Determination Services ("DDS"), a division of the Virginia Department of Rehabilitative Services — under arrangement with the SSA. 20 C.F.R. pt. 404, subpt. Q; *see also* § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

### III. QUESTIONS PRESENTED

Was the Commissioner's assessment of Plaintiff's credibility supported by substantial evidence in the record and the application of the correct legal standard?

Did the Commissioner properly address Plaintiff's obesity?

Was the Commissioner's assignment of weight to the non-treating state agency physicians' opinions supported by substantial evidence in the record and the application of the correct legal standard?

Was the Commissioner's assessment of Plaintiff's RFC supported by substantial evidence in the record and the application of the correct legal standard?

### IV. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. Jan. 5, 2012) (citing *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. *Id.* (citations omitted); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

To determine whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (citation omitted) (internal quotation marks omitted); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589). In considering the decision of the Commissioner

based on the record as a whole, the Court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951) (internal quotation marks omitted)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. *Hancock*, 667 F.3d at 476 (citation omitted). While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; *Mastro*, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied and whether the resulting decision of the Commissioner is supported by substantial evidence on the record. *See Mastro*, 270 F.3d at 176-77.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" ("SGA").[4] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. *Id.* If the claimant establishes that she did not engage in SGA, the second step of the

---

[4] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); *see also* 20 C.F.R. § 404.1520(c). To qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c).

At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to her past relevant work[5] based on an assessment of the claimant's residual functional capacity ("RFC")[6] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. *Id.* The burden of proof remains with the claimant through step four of the analysis, such that she must prove that her limitations preclude her from performing her past relevant work. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hancock*, 667 F.3d at 472 (citation omitted).

---

[5] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[6] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity that the individual can perform based on the evidence available in the case record. *Id.* (footnote omitted).

However, if the claimant cannot perform her past work, the burden then shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (citing *Yuckert*, 482 U.S. at 146 n.5). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all of the claimant's impairments, so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents all of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Id.* If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## V. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since June 14, 2007, the alleged onset date, and was insured through December 21, 2010. (R. at 15-16.) At step two, the ALJ determined that Plaintiff was severely impaired from degenerative disc disease, osteoarthritis, degenerative joint disease of the hip and obesity. (R. at 16.) At step three, the ALJ concluded that Plaintiff's maladies did not meet one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (R. at 16.) In doing so, the ALJ noted that obesity did "not fall within the criteria of a listed impairment." (R. at 16.) The ALJ determined that Plaintiff did not have the inability to ambulate effectively as a result of her obesity and degenerative joint

disease of the hip and did not have multiple impairments involving her cardiovascular or pulmonary systems as a result of her obesity. (R. at 16.) Finally, the ALJ explained that Plaintiff did not have an appearance of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis as a result of her obesity combined with her degenerative disc disease and osteoarthritis. (R. at 16.)

The ALJ then determined that Plaintiff had the RFC to perform light work, except that she was limited to occasional bending, crawling, crouching, kneeling and stooping and could never climb ladders, rope or scaffolds. (R. at 16.) Additionally, Plaintiff required a hand-held assistive device for balancing. (R. at 16.) The ALJ discussed Plaintiff's testimony, which included her height of 5'5" and weight of 262 pounds. (R. at 17.) Plaintiff complained that she had low back pain, sometimes rated at 10 out of 10, which radiated through her right leg to her feet. (R. at 17.) She stated that she could stand for 10 minutes, could walk for 10 to 15 steps before needing a break, needed to alternate between sitting and standing, and could not bend, kneel, squat, reach or lift. (R. at 17.) Plaintiff could shop for groceries, sweep and dust, attend church and visit family. (R. at 17.) She used a cane to ensure that she did not fall, spent most of her day in bed and could no longer drive. (R. at 17.) Plaintiff indicated that she had no side effects from her medication. (R. at 17.) She could take care of her personal needs with assistance, prepare simple meals, read and watch television. (R. at 17.) Plaintiff stopped working when her temporary assignment ended. (R. at 17.)

The ALJ then summarized Plaintiff's medical records, which included MRIs, CT scans and x-rays that revealed a possible small annual tear, a disc bulge, mild degenerative disc disease, mild multilevel facet arthrosis and mild degenerative changes. (R. at 18.) Plaintiff received epidural steroid injections, methadone and tramadol. (R. at 18.) She visited an

orthopedic surgeon, a neurologist and a treating physician. (R. at 18.) Plaintiff was classified as morbidly obese, but was not fatigued severely with normal home activity. (R. at 18.) Her physical examinations continued to contain normal findings with conservative pain treatment. (R. at 18.) Plaintiff attended water aerobics therapy. (R. at 18.) She was recommended to continue to use her cane. (R. at 18.)

Next, the opinion of Dr. Greene was summarized by the ALJ. (R. at 18.) Dr. Green opined that Plaintiff could not work throughout an entire eight-hour day. (R. at 18.) According to him, she could only sit and stand for less than 30 minutes at a time, lift or carry less than 10 pounds and never perform postural activities. (R. at 18.) Plaintiff was also limited to intermittent reaching, handling, fingering and feeling, and no more than three hours of continuous work without a rest break. (R. at 18.)

The ALJ found that Plaintiff suffered from morbid obesity, but that it did not result in fatigue. (R. at 19.) The ALJ characterized Plaintiff's statements, including one that she stayed in bed most of the day, as being out of proportion to and not fully supported by the objective medical evidence. (R. at 19.) Because she was able to perform many ADLs, had conservative medical care and did not have diminished functional capabilities, the ALJ assessed that Plaintiff was not fully credible. (R. at 19.)

While they failed to take into account Plaintiff's use of a cane, the ALJ assigned great weight to the opinions of the non-treating state agency physicians, who determined that Plaintiff had the RFC for light work with occasional stooping, kneeling, crouching, crawling and climbing ramps and stairs. (R. at 19.) The ALJ gave no weight to Dr. Green, Plaintiff's treating physician, because it was not supported by longitudinal evidence and was contradicted by other objective evidence in the record. (R. at 19-20.)

At step four, the ALJ assessed that Plaintiff could not perform any past relevant work. (R. at 20.) Next, considering Plaintiff's age, education, work experience and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (R. at 20-21.) The ALJ therefore found that Plaintiff had not been under a disability under the Act from June 14, 2007. (R. at 21.)

Plaintiff complains that the ALJ improperly assessed her credibility. (Pl.'s Mem. at 8-10.) Next, Plaintiff asserts that the ALJ failed to properly consider her obesity. (Pl.'s Mem. at 3-8.) Finally, Plaintiff complains that the ALJ erroneously assigned great weight to the non-treating state agency physicians and improperly determined her RFC. (Pl.'s Mem. at 10-14.) In contrast, the Commissioner asserts that substantial evidence supported the ALJ's decision. (Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem.") at 8-14.)

## A.    The ALJ properly assessed Plaintiff's credibility.

Plaintiff contends that she was only required to rely on subjective evidence to establish that her pain was so great that she could not work. (Pl.'s Mem. at 10.) This assessment of the legal standard by which the ALJ should evaluate Plaintiff's pain is incorrect. It is well established that Plaintiff's subjective allegations of pain are not, alone, conclusive evidence that Plaintiff is disabled. *See Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994).

In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. *Craig*, 76 F.3d at 594; *see also* SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a). The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. *Craig*, 76 F.3d at 594; SSR 96-7p, at 1-3. In doing so, the ALJ must consider all of

the medical evidence in the record. *Craig*, 76 F.3d at 594-95; SSR 96-7p, at 5 n.3; *see also* SSR 96-8p, at 13.

If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the Plaintiff's impairments and the extent to which it affects the individual's ability to work. *Craig*, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms. The ALJ must provide specific reasons for the weight given to the individual's statements. *Craig*, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11.

Here, the ALJ found that Plaintiff suffered from morbid obesity, but that it did not result in fatigue. (R. at 19.) The ALJ characterized Plaintiff's statements, including one that she stayed in bed most of the day, as being out of proportion to and not fully supported by the objective medical evidence. (R. at 19.) Because she was able to perform many ADLs, had conservative medical care and did not have diminished functional capabilities, the ALJ assessed that Plaintiff was not fully credible. (R. at 19.) As long as substantial evidence supported the conclusion, this Court must give great deference to the ALJ's credibility determinations. *See Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997).

Although Plaintiff testified that her pain was a 10 out of 10 at the hearings, (R. at 47, 105), patient notes continuously documented her pain at a three out of 10 while on medication, but a five out of 10 while working or performing physical activity. (R. at 586, 622, 626, 629, 633, 635, 639.) In contrast to her testimony that she stayed in bed the majority of the day (R. at 111-12), she told her doctor several times that she had no severe fatigue or tiredness while performing normal activities around the house. (R. at 586, 622, 626, 629, 633, 635, 639.)

18

Additionally, patient notes indicated that Plaintiff had a normal range of motion in her hip, knee and ankle joints without pain, 5/5 muscle strength with normal reflexes and a normal straight leg raise. (R. at 587, 622, 626, 629, 633, 636, 640.) Dr. Green also encouraged a regular exercise regimen lasting 20-60 minutes for three to five times a week. (R. at 871.)

The Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" *Eldeco, Inc.*, 132 F.3d at 1011 (quoting *NLRB v. Air Prods. & Chems., Inc.*, 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" *Id.* (quoting *NLRB v. McCullough Envtl. Servs., Inc.*, 5 F.3d 923, 928 (5th Cir. 1993)). Because the ALJ's credibility determination was neither unreasonable nor inconsistent with the objective medical evidence, the ALJ did not err in his findings.

**B.     The ALJ properly considered Plaintiff's obesity.**

Plaintiff argues that her obesity was not properly considered. (Pl.'s Mem. at 3-8.) While obesity is no longer an independently valid impairment, it warrants consideration in conjunction with any related musculoskeletal, respiratory or cardiovascular conditions. SSR 02-1p, at 1. Plaintiff contends that, while the ALJ discussed Plaintiff's obesity at steps two and three of the evaluation process, the ALJ did not consider the combination of Plaintiff's obesity with other impairments, did not address it during the steps of analysis and did not explain how it was factored into her RFC. (Pl.'s Mem. at 5-6.)

The ALJ amply considered Plaintiff's obesity throughout his decision. First, during step three, the ALJ determined that Plaintiff did not have the inability to ambulate effectively as a

result of her obesity and degenerative joint disease of the hip and did not have multiple impairments involving her cardiovascular or pulmonary systems as a result of her obesity. (R. at 16.) The ALJ also explained that Plaintiff did not have an appearance of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis as a result of her obesity combined with her degenerative disc disease and osteoarthritis. (R. at 16.) Therefore, Plaintiff's obesity combined with her other impairments was considered and sufficiently addressed by the ALJ.

Next, the ALJ considered Plaintiff's obesity during his assessment of her RFC and the other steps of analysis. The Commissioner should "consider the effects of obesity not only under the listings but also when assessing a claim at other steps." SSR 02-1p, at 1. While Plaintiff cites to *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 270-71 (D. Md. 2003), to urge the Court to find that the ALJ did not fully consider her obesity (*see* Pl.'s Mem. at 6-8), the ALJ adequately and sufficiently discussed and considered Plaintiff's obesity throughout his decision. Additionally, as long as the ALJ based his determinations on sources that were aware of Plaintiff's obesity, he satisfied this requirement. *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (finding that "[b]ecause her doctors must also be viewed as aware of [plaintiff]'s obvious obesity . . . the ALJ's adoption of their conclusions constitutes a satisfactory if indirect consideration of that condition").

The ALJ specifically discussed Plaintiff's height and weight and the ADLs that she testified to performing. (R. at 17.) He noted her classification of morbid obesity by doctors, but also recognized that physical examinations contained normal findings with Plaintiff's admissions of no severe fatigue during normal home activity. (R. at 18.) Similarly, her own treating physician, whose opinion the ALJ rejected, continually recommended a weekly exercise regimen. (*See* R. at 871.) The ALJ found that Plaintiff suffered from morbid obesity, but that it

did not result in fatigue. (R. at 19.) Plaintiff's patient notes resulted in a finding that Plaintiff was not fully credible, as her statements concerning her ADLs were out of proportion to the objective medical evidence. (R. at 19.) Finally, Plaintiff's RFC specifically included a requirement of a hand-held assistive device for balancing. (R. at 16.) Because the ALJ based his determinations on the objective medical evidence that discussed Plaintiff's abilities in contrast to her morbid obesity, he properly considered Plaintiff's obesity at every necessary stage.

**C.    The ALJ did not err when he assigned great weight to the opinions of the non-treating state agency physicians.**

Plaintiff argues that, because the opinions of the non-treating state agency physicians were dated before some of the medical records, they could not be assigned great weight. During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluation that have been ordered. *See* 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the Plaintiff's treating physicians, consultative examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. *See* 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d).

If a medical opinion is not assigned controlling weight by the ALJ, then the ALJ assesses the weight of the opinion by considering: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship, including the

21

treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area in which an opinion is rendered; and (6) other factors brought to the Commissioner's attention which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(6); *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006).

Although the non-treating state agency opinions were completed in May and December 2008, substantial evidence in the entire record — including the later evidence — supported those opinions. Those doctors opined that Plaintiff could occasionally carry 20 pounds, frequently carry 10 pounds, stand or walk for about six hours in an eight-hour workday and sit for about six hours in an eight-hour workday. (R. at 519-24, 605.) They also determined that Plaintiff could frequently use ramps, climb stairs and balance; could occasionally climb ladders, stoop, kneel, crouch or crawl; and could never climb ropes or scaffolds. (R. at 520, 605.)

For almost once a month between September 2008 and May 2009, Plaintiff visited Dr. Basavaraj and rated her back pain at three out of 10 while on medication, but a five out of 10 while working or performing physical activity. (R. at 586, 622, 626, 629, 633, 635, 639.) She stated that she had no severe fatigue or tiredness while performing normal activities around the house. (R. at 586, 622, 626, 629, 633, 635, 639.) Plaintiff had a normal range of motion in her hip, knee and ankle joints without pain, 5/5 muscle strength with normal reflexes and a normal straight leg raise. (R. at 587, 622, 626, 629, 633, 636, 640.) A May 2009 x-ray of Plaintiff's right hip revealed mild osteoarthritis of bilateral hips and an x-ray of Plaintiff's lumbar spine indicated mild facet arthrosis of L5-S1. (R. at 720-21.) Patient notes from June 2009, July 2009 and November 2009 documented the same findings. (R. at 933-34, 921-23, 901-02.)

While Plaintiff complained of a significantly higher amount of pain every two months between April 2010 and October 2010, rating her pain at a seven out of 10, Dr. Basavaraj still documented that Plaintiff was not severely tired or fatigued with normal home activities and that Plaintiff had a normal range of motion in her hip, knee and ankle joints without pain, 5/5 muscle strength with normal reflexes and a normal straight leg raise. (R. at 833-34, 878-79, 881-82, 885-86.)

During this time, Dr. Basavaraj also documented that Plaintiff should continue to use her cane. (R. at 834, 879, 882, 886.) In fact, the ALJ noted and used this recommendation in his determination that Plaintiff's RFC should include a limitation that required her to use a hand-held assistive device for balancing. (R. at 16.) Because Plaintiff's objective medical records did not change significantly as time passed — only her subjective complaints of pain increased — the ALJ did not err in assigning the non-treating state agency physicians' opinions great weight and including an additional limitation in her RFC that included the necessity of a hand-held device for balancing.

**D.      The ALJ did not err in his RFC determination.**

Plaintiff relies on SSR 96-8p in arguing that the ALJ improperly assessed his RFC. (Pl.'s Mem. at 8-12.) Plaintiff complains that the ALJ failed to set forth a narrative discussion and function by function assessment of Plaintiff's RFC — more specifically her obesity — as required in SSR 96-8p. (Pl.'s Mem. at 12.) In his decision, the ALJ summarized Plaintiff's medical history and statements. (R. at 17-20.) The ALJ noted Plaintiff's allegations of her limitations, including Plaintiff's claim that she spent all day in her bedroom resting. (R. at 17.) This alleged limitation was contrasted with objective medical evidence that indicated that, although Plaintiff suffered from morbid obesity, it did not result in fatigue. (R. at 19.)

Additionally, while the ALJ analyzed and assessed Plaintiff's credibility, he listed her alleged limitations, which included bending, kneeling, squatting, reaching, lifting, standing, reaching, walking and sitting. (R. at 17.) He then summarized the objective medical evidence, which, in contrast to her alleged limitations, documented Plaintiff's normal gait, strength, reflexes and tone. (R. at 18-19.) The ALJ also adopted and discussed the non-treating state agency physicians' opinions that Plaintiff could only occasionally stoop, kneel, crouch, crawl and climb ramps and stairs. (R. at 19.) After assessing her credibility, the ALJ noted that Plaintiff's severe impairments did not have "more than a minimal effect on her ability to function." (R. at 20.) Based on the record, the ALJ properly completed a function-by-function analysis to determine Plaintiff's RFC.

Finally, Plaintiff complains that the ALJ failed to include any limitation on her ability to sit, stand or walk. (Pl.'s Mem. at 14.) The ALJ determined that Plaintiff had the RFC to perform light work, except that she was limited to occasional bending, crawling, crouching, kneeling and stooping and could never climb ladders, rope or scaffolds. (R. at 16.) Additionally, Plaintiff required a hand-held assistive device for balancing. (R. at 16.) A hand-held device would be used when Plaintiff was standing, walking or sitting. Therefore, the ALJ did include a limitation for Plaintiff's ability to sit, stand or walk in the RFC determination. Because the ALJ properly considered Plaintiff's obesity and his decision — including the RFC determination — was supported by substantial evidence in the record, the ALJ's decision should be affirmed.

## VI. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (ECF No. 7) be DENIED, Defendant's motion for summary

judgment (ECF No. 9) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Henry E. Hudson and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Dated: October 16, 2012